## Kurtz's Appeal.   Greider's Estate.

Where lands are sold by virtue of proceedings in partition, and the one-third part of the purchase-money charged upon the estate, the interest of which to be paid to the widow during her life, and at her death the principal to the heirs of her husband; a judicial sale of the land upon a judgment against the purchaser, will discharge the lien of a mortgage given by him, although the mortgage is prior to all other liens, except the charge in favour of the widow and heirs.

THIS is an appeal by Jacob H. Kurtz and John Eshbach, two of the judgment creditors of Jacob Greider, from a decree of the Court of Common Pleas of Lancaster county, distributing the proceeds of the sheriff's sale of the real property of Jacob Greider, made under an alias *venditioni exponas* to January Term, 1856.

On the 25th September, 1851, John Immel died intestate, seised of certain real estate in the village of Millerstown, in the county of Lancaster.   Under proceedings in partition, this real property was divided into seven purparts, two of which, Nos. 2 and 7, were accepted by Jacob Immel and Margaret Keller, and the remaining purparts, having been refused by the heirs, were, on the 17th of November, 1851, ordered to be sold.   On the 13th December, 1851, in pursuance of the above-mentioned order of court, purpart No. 1 was sold to Jacob Greider for the sum of $3980, and the sale having been confirmed by the court, a deed for that purpart was, on the 31st day of March, 1852, executed and delivered by the administrators of John Immel to Jacob Greider, subject to the payment of the interest of one-third of the purchase-money to the widow of John Immel during her life, and after her death the principal to the heirs of the said John Immel, deceased.

On the 2d day of April, 1852, a mortgage upon the aforesaid property, for the security of the sum of $2139.61, was given by the purchaser, Jacob Greider, to Christian Herr, Henry Herr and others, trustees for the use of Catharine Greider, under the will of her father, Abraham Herr, deceased.

Subsequently a number of judgments were obtained against Jacob Greider, among which was one in favour of the Lancaster Savings Institution to August Term, 1853, for $206.08, afterwards assigned to John Eshbach, one of these appellants, and another to January Term, 1854, for $115,95, in favour of Jacob H. Kurtz, who is also an appellant.

Upon the former of these judgment a *fi. fa.* was issued against Greider to April Term, 1854, under which the aforesaid real property was levied upon and condemned.   A *venditioni ex-*

*ponas* was issued for the sale of the property levied upon to November Term, 1855, which was abandoned.   On an *alias venditioni exponas* to January Term, 1856, the property was sold to Henry Herr, one of the trustees in the mortgage above-mentioned, for the sum of $2075.   From which deducting costs, the nett proceeds for distribution among creditors amount to $2013.10.   This fund having, on motion of Jacob H. Kurtz, one of the judgment creditors above-named, been paid into court, was, on the 15th of April, 1856, directed to be paid to Christian Herr and others in satisfaction, so far as it would reach, of the mortgage held by them as trustees of Catharine Greider.   From that decree this appeal is taken by the judgment creditors above-named.

*Slaymaker, Smith*, and *McElroy*, for appellants.

*Franklin*, contrà.

The opinion of the court was delivered by

KNOX, J.—The character of a widow's interest in the real estate of her deceased husband, after its allotment or sale under proceedings in partition in the Orphans' Court, has frequently been the subject of judicial decision by this court.   We are not aware, however, that the precise question now presented has ever been passed upon.   It is this: Where lands are sold by virtue of proceedings in partition, and the one-third part of the purchase-money charged upon the estate, the interest of which to be paid to the widow during her life, and at her death the principal to be paid to the heirs of her deceased husband, will a judicial sale of the land, upon a judgment against the purchaser, discharge the lien of a mortgage given by him, and which mortgage is prior to all other liens, except the charge in favour of the widow and heirs? That the widow's interest is real estate, is well settled by repeated decisions.   In Shoupe *v.* Shoupe, 12 *Ser. & R.* 9, it was declared to be the subject of levy and sale upon an execution.   And in Miller *v.* Leidy, 3 *W. & Ser.* 456, it was held to be an incorporeal hereditament in the nature of a rent-charge, and subject to the control of a husband only as real estate.   But it has likewise often been treated as a lien upon the land charged with its payment.   In Medlar and another *v.* Aulenbach and Wife, 2 *Pa. Rep.* 355, it was said by Mr. Justice ROGERS to be a statutory lien in favour of the widow for the annual interest, and in favour of the heir of the intestate for the principal sum upon the widow's death.   Mentzre *v.* Mener, 8 *Watts* 296, declares the lien of a recognisance given for the widow's interest to remain in full force after a judicial sale, as the property of a son who had taken the estate at the appraisement.   And in Hill *v.* Geiger, 7 *W. & Ser.*

[Kurtz's Appeal. Greider's Estate.]

273, it was held that the lien was created by virtue of the order to sell, independent of a mortgage or other security which might be taken to secure the unpaid purchase-money, and that upon the death of the widow neither the purchaser nor his alienee could legally pay the principal to the administrator by whom the sale had been made, and to whom a bond and mortgage had been given. But whatever doubt there may be as to the nature of the widow's estate, it is certain that, so far as relates to the principal sum, it is simply a charge upon the land in the nature of a lien, payable at the widow's death to the heirs of the intestate, to be recovered as personal only.

The right of distress gives to the widow's interest the character of realty, or rather prevents the conversion of the estate to personalty. This right does not extend to the heirs, and therefore it is unquestionable that the principal sum is simply a lien upon the land. We do not feel disposed to give to the Act of 6th April, 1830, a more enlarged construction than its words demand, for its enactment was an innovation upon the well-settled principle that a purchaser at a judicial sale took lands divested of the liens of judgments or mortgages—a principle which commended itself to the profession for its certainty and simplicity. The Act of 1830 protects the lien of a mortgage from being discharged by a judicial sale where the lien is prior to all other liens except other mortgages, ground-rents, and the purchase-money due the Commonwealth. The mortgage in question was not prior to all other liens save those mentioned in the act, and consequently its lien was divested by the sale, and it was entitled to be paid out of the fund raised by the sale. It is proper to add that there is nothing in the character of the mortgage which prevents its extinguishment by the sheriff's sale.

Decree affirmed, at the costs of the appellants.