Sophia R. Bentley *v.* Lumbermen's Insurance Company,
                            Appellant.

*Insurance—Fire insurance—Covenants in policy—Use of benzine.*

In an action upon a policy of fire insurance, it appeared that the insured
had purchased ten gallons of benzine in two five gallon cans, one of which
was placed in an outside kitchen, and the other was taken into the parlor,
and from it the liquid was poured into a small watering pot, and was thus
used to sprinkle over the carpet and furniture. The benzine was pur-
chased about an hour before it was used, and the can which was taken into
the parlor was removed from that place immediately after it was used.
The contents of one can only was used. An explosion occurred soon after
the sprinkling was finished, and a fire resulted from the explosion. Ben-
zine had been used before with perfect impunity, and the plaintiff had
been informed that it was not dangerous to use it if there was no light or
fire in the room. The policy required that notice should be given "if the
risk of the building insured shall afterwards be increased by any means
whatever within the control of the assured; or if said building shall after-
wards be occupied in any way so as to increase the risk." No notice was
given to the company of the intended use of the benzine. *Held,* that the
policy was not rendered void by the use of the benzine.

Argued Jan. 9, 1899. Appeal, No. 157, Jan. Term, 1898,
by defendant, from judgment of C. P. No. 4, Phila. County,
Sept. T., 1896, No. 308, on verdict for plaintiff. Before STER-
RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN
and FELL, JJ. Affirmed.

Assumpsit upon a policy of fire insurance, for partial loss by
fire. Before ARNOLD, P. J.

The policy was in the sum of $4,000 on a brick dwelling
house. There was an explosion caused by the use of benzine,
blowing the skylight out of the top of the house, demolishing
the heater in the cellar and setting the house afire.

The additional facts appear by the opinion of the Supreme
Court.

The court charged in part as follows:

[The rule of law in a case of this kind is this, that a person is
not entitled to recover upon a policy of insurance if the loss is
caused by what we call gross carelessness or negligence of the

person insured, so that if you are of opinion that the loss was occasioned by the gross carelessness and negligence of Mrs. Bentley in taking into the house an explosive article, of course, the company is not liable, but if the loss occurred by what we call ordinary negligence or carelessness, such as anybody might be guilty of, then that is one of the risks which the policy covers.] [1]

The first point for you to determine is, How was this fire occasioned? Was it occasioned by the gross carelessness or the ordinary negligence of the insured, Mrs. Bentley? [If it was occasioned by ordinary negligence, she may be entitled to recover in this case.] [2] If it was occasioned by gross carelessness, such as no person should be guilty of, the misfortune is her own and she cannot recover. That is the first point in the case.

There is another defense made, that the loss was occasioned, not so much by fire, as by explosion. Now, the policy insures against loss by fire, and does not cover loss by explosion, so that if the loss was all by fire and none by explosion the plaintiff would be entitled to recover if she is not guilty of any gross carelessness, while if the loss was occasioned altogether by explosion and not by fire, then she is not entitled to recover. In other words, the policy covers losses by fire but not losses by explosion. Now, all the testimony in this case shows that the fire was caused by an explosion. The use of benzine in the house, by sprinkling it over the furniture, caused an evaporation and the creation of inflammable gas, which exploded, and for as much injury was caused by the explosion the company is not liable. Exactly what the proportion is is very difficult to determine by any positive testimony in this case, but you, as jurors, having heard all the case and what the witnesses testified, have a right to say what damage in your judgment was caused by the explosion and what damage was caused by the fire. If the house was blown out, the building in any manner destroyed, it then became a mass of materials and of course, those materials, although burned, were not worth as much as they were in the building. So you will inquire and determine upon the testimony how much of that loss you think was due to the explosion and how much to the fire. I charge you again that the company is not liable for any loss by explosion, but simply for the loss by fire.

The two questions in the case are these: Is the company exonerated from liability upon this policy by the gross carelessness and gross negligence of Mrs. Bentley in the use of benzine in the manner in which it has been testified she used it? If you are of opinion that her conduct was grossly careless, and that that was the cause of the fire, of course the company is exonerated, and she cannot recover. [If, however, you believe it was not grossly careless, but simply what we call ordinary negligence, that is one of the risks which insurance companies insure against, and the company is responsible.] [3]

Verdict and judgment for plaintiff for $2,078.88. Defendant appealed.

*Errors assigned* among others were (1–3) above instructions, quoting them.

*Edwin S. Dixon*, for appellant.—The learned trial judge in his charge and answers to defendant's points left this case to the jury upon the question of negligence, to the exclusion of all other questions; whereas, if it was a proper case for the jury it should have been upon the question of increased hazard or risk. The trial judge not only left it to the jury upon the question of negligence, but asked the jury to distinguish between gross negligence and ordinary negligence, which classification is wrong in principle and leads to confusion and mistake: Milwaukee, etc., Ry. Co. v. Arms, 91 U. S. 489.

*John G. Johnson*, for appellee.—The risk of the building was not increased: 1 May on Insurance, sec. 218.

There was no change in its occupancy. It continued to the end to be occupied as a private dwelling: Somerset County Mutual Fire Ins. Co. v. Usaw, 112 Pa. 80.

The policy did not prohibit the burning upon the premises of any articles meant to be used in connection with its occupancy as a private dwelling: Mears v. Humboldt Ins. Co., 92 Pa. 15; Lancaster Silver Plate Co. v. National Fire Ins. Co., 170 Pa. 151; Citizens' Ins. Co. v. McLaughlin, 53 Pa. 485; Krug v. German Fire Ins. Co., 147 Pa. 272.

OPINION BY MR. JUSTICE GREEN, May 8, 1899:

On the trial of this case it was fully established by the only

testimony that was given on the subject, and not at all contradicted, that the benzine taken on the premises was procured only for the purpose of cleansing and protecting the carpets and furniture in the house. The quantity purchased was ten gallons, in two five gallon cans, one of which was placed in an outside kitchen and the other was taken into the parlor and from it the liquid was poured into a small watering pot, and was thus used to sprinkle over the carpet and furniture. The benzine was purchased only an hour or so before it was used, and the can that was taken into the parlor for use was removed from that place immediately after it was used. The contents of only one can were used. The explosion occurred soon after the sprinkling was finished, and the fire resulted from the explosion. The court below instructed the jury there could be no recovery for the injury done by the explosion, but that there might be a recovery for the loss resulting from the fire, unless the plaintiff was guilty of gross carelessness in using the benzine. The defendant contends that the court should have directed a verdict for the defendant because of a provision in the policy in the following words : " If the risk of the building insured shall afterwards be increased by any means whatever within the control of the assured ; or if said building shall afterwards be occupied in any way so as to increase the risk, and notice thereof be not given to the company and such increased risk be allowed and endorsed on this policy or otherwise acknowledged in writing by the company, said policy shall be void during the continuance of said increased risk." It is very clear that the property was not occupied so as to increase the risk under the facts in evidence. There was no occupancy of the property for a purpose increasing the risk, but only a temporary use of an article which it is claimed increased the risk by the manner of its use. The words, " If the risk of the building insured shall afterwards be increased by any means whatever, within the control of the assured," literally import a risk in the structure or character of the building, and as there is nothing of that kind to be found in the testimony those words become inapplicable to the present contention. In actual fact the basis of liability is only to be found in the circumstance that benzine was used in the building for the purpose of protecting the carpets and furniture. The question is then presented whether in such

circumstances as are developed by the testimony the right of recovery for loss by fire was forfeited. On this subject the following considerations and authorities seem to be pertinent and controlling. While it may be conceded that benzine was a hazardous article to use in the way that it was used by the plaintiff, such user of such an article was not specifically prohibited by the policy, and therefore the case does not present the aspect of the absolute breach of an express condition. To illustrate more closely, if the policy had expressly provided that the bringing of benzine upon the premises for any purpose, or in any manner, should avoid the policy, there would have been an apparent breach of a positive condition, and the plaintiff would probably have been debarred from a recovery. But the policy did not contain any such condition. It contained only a general condition that the risk of the building should not be increased. Conceding for the moment that the action of the plaintiff did operate to increase the risk of the building, the authorities establish that an increase of the risk arising in such a manner does not avoid the policy. Thus in the case of Dobson v. Sotheby, 1 Mood. & Malk. 90, where it was stipulated in the policy that " no fire was kept and no hazardous goods were deposited on the premises," and the loss had happened in consequence of making a fire thereon, and burning a tar barrel for the purpose of repairs, Lord TENTERDEN said: " I think that the condition must be understood as forbidding only the habitual use of fire, or the ordinary deposit of hazardous goods, not their occasional introduction, as in this case for a temporary purpose connected with the occupation of the premises." This case was cited with approbation in the opinion of this Court in the case of Farmers' and Mechanics' Insurance Co. v. Simmons, 30 Pa. 299. In Citizens' Ins. Co. v. McLaughlin, 53 Pa. 485, the syllabus is as follows : A policy of insurance on a patent leather manufactory allowed keeping benzole in no place but in a shed detached from the building; the insured in conducting their business used benzole and carried it as needed into the factory in an open can. Held not to be a breach of the conditions of the insurance. Benzole being ordinarily used in such manufacture, the presumption was that it was intended that it might be used as it is ordinarily used in similar factories. In Mears v. Humboldt Ins. Co., 92 Pa. 15, a policy of insurance contained

a condition " that if the assured shall keep or have in any place on the insured premises where this policy may apply, petroleum, naphtha, benzine, benzole, gasoline, benzine varnish, or any product, in whole or in part of either . . . . or keep, have or use camphene, spirit gas or any burning fluid or chemical oil without written permission in this policy, then and in every such case this policy shall be void." With proper precautions the assured took and used benzine on the premises insured for the purpose of cleaning machinery. Held that the words " keep or have" were intended to prevent the permanent and habitual storage of the prohibited articles, and taking them on the premises for the purpose of cleaning the machinery was not embraced within the meaning of these words.

It will be observed that in this case the policy expressly prohibited, under penalty of forfeiture, the mere "having" or "keeping" benzine on the premises, or the use of any burning fluid of any kind. In the course of the opinion PAXSON, J., said: " The words 'keep or have,' as applied to the articles first enumerated, evidently were intended to prevent a storage of the prohibited articles upon the premises, either permanently or habitually. While the words are used in the disjunctive, they are evidently synonymous, and signify to retain in possession. It would be straining a point to say that bringing a prohibited article upon the premises upon a single occasion, and for the sole purpose of cleaning machinery, was keeping or having it there within the meaning of the policy. The evidence shows, and it is not denied, that the can of benzine used for the purpose above stated was not kept on the insured premises during the period of its use, but was stored in a bonded warehouse, fifty or sixty feet distant. The witness, William Jacobs, who cleaned the machinery, got it from the warehouse from time to time as he needed it. The assured did not keep or have benzine upon the insured premises within any reasonable view of the meaning of the policy. . . . We are not disposed to give the word 'use' in this policy the narrow construction claimed for it. It must have a reasonable interpretation, such as was probably contemplated by the parties at the time the contract was entered into. Nearly every policy issued at the present time contains this provision or a similar one. What is intended to be prohibited is the habitual use of such articles,

not their exceptional use upon some emergency. The strict rule claimed by the defendants would prevent the assured from painting his house or cleaning his furniture, as it would be difficult to do either without using some of the prohibited articles."

All of the foregoing comments are applicable to the present case, with the exception in favor of the latter that in this policy the keeping or the using of benzine on the premises was not prohibited as it was in the former. If, therefore, where such keeping or use was specifically prohibited, an occasional use was not within the prohibition, how much more would that be so where the article was not prohibited at all. In this case the use of the benzine was of the most temporary and occasional character. It was only used to clean and protect the carpets and furniture. It had been used before with perfect impunity. The plaintiff was expressly told it was not dangerous to use it if there was no light or fire in the room. The decision in the last cited case seems to cover and control every aspect of this. Even if it did tend to increase the risk, a mere occasional use would not be an infringement of the policy, because that kind of use is permissible under a policy which prohibits any use or any keeping.

Other authorities are to the same effect. In Krug v. German Fire Ins. Co., 147 Pa. 272, we held that, "A single brief violation of the terms of the policy for the necessary work incidental to the preservation of the property insured will not be considered a breach of a condition which prescribes the use of the premises." In Lancaster Silver Plate Co. v. National Fire Ins. Co., 170 Pa. 151, a policy of fire insurance on a building used for silver plating, contained the stipulation "this entire policy shall be void if (any usage or custom of trade or manufacture to the contrary notwithstanding) there be kept, used or allowed on the above described premises, benzine, benzole, dynamite, ether, gasoline . . . . or other explosive." A barrel of gasoline was kept in an uninsured building about fifteen feet from the factory. When gasoline was needed it was drawn from a barrel through a spigot and carried into the factory where it was emptied into a kettle and used in carrying on the business of silver plating. Held, that it was proper to admit evidence that gasoline was necessary in carrying on the business of silver plating and that it was so used when the policy was

issued and continued to be used up to the date of the fire.  It was also proper to refuse to charge that if the plaintiffs used gasoline on the premises during the life of the policy, the policy became void, and there could be no recovery.

It is not necessary to continue the citations.  Those above given fully dispose of the contentions in this case.  The learned court below gave the defendant an opportunity to defeat a recovery if it could establish that the plaintiff was guilty of gross negligence in using the benzine as she did, and directed the jury to render a verdict for the defendant if they should so find.  It was its only chance of recovery, and it cannot complain that this opportunity was afforded it.  The jury found for the plaintiff on this subject and thereby acquitted her of the charge.  We do not see how any other verdict could have been rendered.  The assignments of error are all dismissed.

Judgment affirmed.